Patrice L. Bishop (182256)
pbishop@ssbla.com
**STULL, STULL & BRODY**
9430 W. Olympic Blvd., Suite 400
Beverly Hills, CA 90212
Tel:   310-209-2468
Fax:   310-209-2087

*Counsel for Plaintiff*

(Additional Counsel on Signature Page)

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| NANCY PERLMUTTER, Individually and on Behalf of all Others Similarly<br><br>             Plaintiff,<br><br>    v.<br><br>YAHOO! Inc.<br>             Defendant, | Case No. 16-cv-05643<br><br>**COMPLAINT**<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Nancy Perlmutter ("Plaintiff"), by and through her undersigned counsel, submits this Complaint on behalf of herself and all others similarly situated.  Plaintiff's allegations are based upon her personal knowledge as to herself and her own acts, and upon information and belief, developed from the investigation and analysis by Plaintiff's counsel, including a review of publicly available information.

## NATURE OF THE ACTION

1. Defendant Yahoo! Inc., together with its consolidated subsidiaries ("Yahoo" or the "Company"), is a global technology company that provides a variety of products and services on the Internet and mobile devices, many of them personalized, including search, content, and communications tools, including email.

2. Yahoo states that its competitive advantage is that it endeavors to make people's daily digital habits more entertaining.  This includes daily activities like communicating, searching, reading and sharing information.

3. As part of its products and services, Yahoo collects, stores and transmits its customers' personal and proprietary information in their facilities and on its equipment, networks and corporate systems.  Indeed, the Yahoo Privacy Center states that:

> Yahoo collects personal information when you register with Yahoo, when you use Yahoo products or services, when you visit Yahoo pages or the pages of certain Yahoo partners, and when you enter promotions or sweepstakes. Yahoo may combine information about you that we have with information we obtain from business partners or other companies.
>
> When you register we ask for information such as your name, email address, birth date, gender, ZIP code, occupation, industry, and personal interests. For some financial products and services we might also ask for your address, Social Security number, and information about your assets. When you register with Yahoo and sign in to our services, you are not anonymous to us.

4. In terms of Confidentiality & Security, the Yahoo Privacy Center states:

> We limit access to personal information about you to employees who we believe reasonably need to come into contact with that information to provide products or services to you or in order to do their jobs.
>
> We have physical, electronic, and procedural safeguards that comply with federal regulations to protect personal information about you.

COMPLAINT
CASE NO. 16-cv-05643

5. Despite Yahoo's representations and assurances, Yahoo did not adequately safeguard its computer systems from improper access by hackers and was negligent in allowing massive numbers of its customer's personal information, of the type that is sold on black markets to criminals and identity thieves, to be stolen from Yahoo's computers.

6. On September 22, 2016, Yahoo announced that at least 500 million of its customers' personal and proprietary information had been stolen by hackers (the "Breach"), the largest data breach in the history of the Internet. However, as detailed below, a former Yahoo executive familiar with the Company's security systems has estimated that the Breach may have actually compromised one to three billion Yahoo customer accounts.

7. According to a September 23, 2016 *The New York Times* article regarding the Breach:

> Changing Yahoo passwords will be just the start for many users. They'll also have to comb through other services to make sure passwords used on those sites aren't too similar to what they were using on Yahoo. And if they weren't doing so already, they'll have to treat everything they receive online with an abundance of suspicion, in case hackers are trying to trick them out of even more information.

*See* http://www.nytimes.com/2016/09/23/technology/yahoo-hackers.html.

8. Further, according to Alex Holden, the founder of Hold Security, which tracks the flow of stolen Yahoo credentials on the underground web, "[t]he stolen Yahoo data is critical because it not only leads to a single system but to users' connections to their banks, social media profiles, other financial services and users' friends and family" and that "[t]his is one of the biggest breaches of people's privacy and very far-reaching."[1]

9. Plaintiff and other members of the Class and Subclass, defined below, are now forced to incur expenses and to take steps (including freezing their credit files) to protect themselves from, or to remediate harm caused by, identity thieves and other criminals.

10. The personal information of Yahoo customers was stolen in 2014, two years ago. Significantly, Yahoo had substantial motive and opportunity to conceal the fact that the security of

---

[1] *Id.*

COMPLAINT
CASE NO. 16-cv-05643

- 2 -

1  its computer systems had been breached and that more than half a billion of its customer's
2  personal data had been stolen.

3  11.  Indeed, among other things, on July 24, 2016, Verizon offered $4.8 billion to
4  acquire Yahoo's core assets.  Now, according to a September 26, 2016 *New York Post* article,
5  "Verizon is livid they were not informed during due diligence and infighting … is impacting the
6  Yahoo deal and this could be the escape clause."  The *New York Post* also reported that "[m]edia
7  and tech bankers are already whispering that Verizon wants to get out of the Yahoo deal — and if
8  they do they may pursue Twitter, which is now in play."  The *Post* further reported that a source
9  said that they "would expect a price renegotiation at a minimum[.]"  *See* http://nypost.com/2016/
10 09/26/yahoo-hack-may-send-verizon-running-from-potential-merger/

11 12.  Moreover, the public disclosure of the Breach has led multiple United States
12 Senators to initiate investigations of Yahoo.  As detailed below, on September 27, 2016, six
13 Democratic Senators asked Yahoo's CEO to answer detailed questions regarding the Breach and
14 the Company's cybersecurity.  Further, according to a September 27, 2016 *Reuters* article,
15 Democratic Senator Mark Warner asked the Securities and Exchange Commission to investigate
16 Yahoo and its senior executives' disclosure of the Breach.  *See* http://www.reuters.com/article/us-
17 yahoo-cyber-congress-idUSKCN11W1VM.

18 13.  Plaintiff brings this action as a class action against Yahoo for its negligent failure to
19 adequately protect the personal information of its customers and for failing to timely notify
20 customers that their personal information had been stolen from Yahoo's computer system.
21 Plaintiff seeks to recover damages caused to her and the Class and Subclass caused by Yahoo's
22 violations of law.  Plaintiff seeks injunctive relief requiring Yahoo to properly safeguard
23 customer's personal information on its computer system or alternatively, remove such personal
24 information from its computer system.  Plaintiff also seeks declaratory relief that the limitation of
25 liability clause in the Yahoo terms of use policy shall not be enforceable as it violates the public
26 policy by relieving liability in a vacuum without regard to the particular situation or occurrences.
27 ///
28 ///

COMPLAINT
CASE NO. 16-cv-05643

## PARTIES

14. Plaintiff Nancy Perlmutter has been a Yahoo customer during and prior to 2014 to the present. She is a resident of the state of New Jersey.

15. Defendant Yahoo is organized under the laws of the state of Delaware and maintains its principal executive offices at 701 First Avenue, Sunnyvale, California 94089. In public filings with the Securities and Exchange Commission, Yahoo describes its business as a guide to digital information discovery, focused on informing, connecting, and entertaining users through its search, communications, and digital content products. By creating highly personalized experiences, the Company helps users discover the information that matters most to them around the world — on mobile or desktop.

## JURISDICTION AND VENUE

16. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d)(2), because the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and Plaintiff and defendant Yahoo are citizens of different states. The proposed Class and Subclass each include well over 100 members.

17. This Court has jurisdiction over Yahoo because the Company maintains its principal place of business in this District in Sunnyvale, California; regularly conducts business in California; and has sufficient minimum contacts in California. Yahoo intentionally avails itself of this jurisdiction by marketing and selling products from California to millions of consumers nationwide, including Yahoo customers in the state of New Jersey.

18. Venue is proper in this District pursuant to 28 U.S.C. §1391 because Yahoo is a resident of this District and is subject to this Court's personal jurisdiction. Yahoo is registered to conduct business throughout California, regularly conducts business in this District, and maintains an office in this District. In addition, the causes of action arose, in substantial part, in this District

## CLASS ACTION ALLEGATIONS

19. Plaintiff brings this class action pursuant to the Federal Rules of Civil Procedure 23(a) and (b)(3), on behalf of herself and all others similarly situated in the United States, who were Yahoo customers during and since the Breach, had their personal information stolen from

Yahoo computer systems, and were damaged thereby (the "Class"). Plaintiff also brings Count III alleged below on behalf of a subclass of New Jersey residents who were Yahoo customers during and since the Breach and had their personal information stolen from Yahoo computer systems and were damaged thereby (the "Subclass"). The Class and Subclass do not include Yahoo officers or directors.

20. The Class and Subclass consist of potentially millions of Yahoo customers. While the exact number of members of the Class and Subclass and the identities of individual members of the Class and Subclass are unknown to Plaintiff's counsel at this time, and can only be ascertained through appropriate discovery, based on the fact that 500 million Yahoo customers have been adversely affected, the membership of the Class and Subclass are each so numerous that joinder of all members is impracticable.

21. Yahoo's wrongful conduct affected all members of the Class and Subclass in exactly the same way. The Defendant's failure to properly safeguard its customer's personal information is completely uniform among the Class and Subclass.

22. Questions of law and fact common to all members of the Class and Subclass predominate over any questions affecting only individual members. Such common questions of law and fact include:

a. whether the Defendant acted wrongfully by failing to properly safeguard its customer's personal information collected and stored by Yahoo on its computer system;

b. whether Defendant's conduct violated law;

c. whether the Plaintiff and the other members of the Class and Subclass have been damaged, and, if so, what is the appropriate relief; and

d. whether the Defendant breached its duties owed to members of the Class and Subclass and by failing to properly safeguard their personal information.

23. The Plaintiff's claims, as described herein, are typical of the claims of all other members of the Class and Subclass, as the claims of the Plaintiff and all other members of the Class and Subclass arise from the same set of facts regarding the Defendant's failure to protect the

1  Class and Subclass member's personal information from computer hackers.  The Plaintiff
2  maintains no interest antagonistic to the interests of other members of the Class or Subclass.

3        24.      The Plaintiff is committed to the vigorous prosecution of this action and has
4  retained competent counsel experienced in the prosecution of class actions of this type.
5  Accordingly, the Plaintiff is an adequate representative of the Class and Subclass and will fairly
6  and adequately protect their interests.

7        25.      This class action is a fair and efficient method of adjudicating the claims of the
8  Plaintiff and the Class and Subclass for the following reasons:

9      a.    common questions of law and fact predominate over any question affecting any
10        individual Class and Subclass members;
11      b.    the prosecution of separate actions by individual Class and Subclass members
12        would likely create a risk of inconsistent or varying adjudications with respect to
13        individual members thereby establishing incompatible standards of conduct for
14        Defendant or would allow some Class and Subclass members' claims to adversely
15        affect the ability of other members to protect their interests;
16      c.    this forum is appropriate for litigation of this action since a substantial portion of
17        the transactions, acts, events, and omissions alleged herein occurred in this District;
18      d.    the Plaintiff anticipates no difficulty in the management of this litigation as a class
19        action; and
20      e.    the Class and Subclass is readily definable, and prosecution as a class action will
21        eliminate the possibility of repetitious litigation, while also providing redress for
22        claims that may be too small to support the expense of individual, complex
23        litigation.

24        26.      For these reasons, a class action is superior to other available methods for the fair
25  and efficient adjudication of this controversy.

26  ///
27  ///
28  ///

COMPLAINT
CASE NO. 16-cv-05643

## SUBSTANTIVE ALLEGATIONS

27. Plaintiff has had a Yahoo email account prior to and during 2014 and to the present, and had provided Yahoo personal information in order to initiate her Yahoo account to be used solely by Yahoo for purposes of maintaining and facilitating such account.

28. Yahoo collected and stored Plaintiff's personal information on its computer system and used that information for, among other things, selling rights to marketers who sought to advertise goods and services to Plaintiff and other Class and Subclass members when they used Yahoo

29. On September 22, 2016, Yahoo issued a press release announcing that at least 500 million of its customers' personal and proprietary information had been stolen by hackers, the largest data breach in the history of the Internet. Yahoo stated:

> SUNNYVALE, Calif.--(BUSINESS WIRE)--A recent investigation by Yahoo! Inc. (NASDAQ:YHOO) has confirmed that a copy of certain user account information was stolen from the company's network in late 2014 by what it believes is a state-sponsored actor. The account information may have included names, email addresses, telephone numbers, dates of birth, hashed passwords (the vast majority with bcrypt) and, in some cases, encrypted or unencrypted security questions and answers. The ongoing investigation suggests that stolen information did not include unprotected passwords, payment card data, or bank account information; payment card data and bank account information are not stored in the system that the investigation has found to be affected. Based on the ongoing investigation, Yahoo believes that information associated with at least 500 million user accounts was stolen and the investigation has found no evidence that the state-sponsored actor is currently in Yahoo's network. Yahoo is working closely with law enforcement on this matter.
>
> Yahoo is notifying potentially affected users and has taken steps to secure their accounts. These steps include invalidating unencrypted security questions and answers so that they cannot be used to access an account and asking potentially affected users to change their passwords. Yahoo is also recommending that users who haven't changed their passwords since 2014 do so.
>
> Yahoo encourages users to review their online accounts for suspicious activity and to change their password and security questions and answers for any other accounts on which they use the same or similar information used for their Yahoo account. The company further recommends that users avoid clicking on links or downloading attachments from suspicious emails and that they be cautious of unsolicited communications that ask for personal information . . .

COMPLAINT
CASE NO. 16-cv-05643

30. Yahoo apparently learned of the breach after initiating an investigation into an alleged data breach in July. While some early reports claim that Yahoo CEO Mayer knew the Company was investigating the Breach since July,[2] Yahoo chief security officer Bob Lord subsequently claimed the alleged July incident and the Breach were separate issues, but that the July incident did lead the Company to uncover the Breach.[3]

31. On September 27, 2016, Democratic Senators Patrick Leahy (Vt.), Al Franken (Minn.), Elizabeth Warren (Mass.) Richard Blumenthal (Conn.), Ron Wyden (Ore.), and Edward J. Markey (Mass.), sent a letter to Yahoo CEO Mayer regarding the Breach (the "Senate Letter"). The Senate Letter stated, in part:

> The stolen data included usernames, passwords, email addresses, telephone numbers, dates of birth, and security questions and answers. This is highly sensitive, personal information that hackers can use not only to access Yahoo customer accounts, but also potentially to gain access to any other account or service that users access with similar login or personal information, including bank information and social media profiles.
>
> We are even more disturbed that user information was first compromised in 2014, yet the company only announced the breach last week. That means millions of Americans' data may have been compromised for two years. This is unacceptable. This breach is the latest in a series of data breaches that have impacted the privacy of millions of American consumers in recent years, but it is by far the largest. Consumers put their trust in companies when they share personal and sensitive information with them, and they expect all possible steps be taken to protect that information.

https://www.leahy.senate.gov/imo/media/doc/9-27-16%20Yahoo%20Breach%20Letter.pdf

32. The Senate Letter posed eight questions to Yahoo "to help Congress and the public better understand what went wrong and how Yahoo intends to safeguard data and protect its users, both now and in the future." These questions included the Breach's timeline, including when and how it was discovered, and when Yahoo notified law enforcement or other government authorities about the Breach; why it took Yahoo so long to discover the Breach; which of Yahoo accounts,

---

[2] *See* http://www.cnbc.com/2016/09/23/yahoo-ceo-mayer-knew-about-data-breach-in-july-report.html; http://www.dailymail.co.uk/news/article-3806049/What-did-know-did-know-Yahoo-chief-Marissa-Mayer-knew-July-company-investigating-security-breach-disclosed-week.html

[3] *See* http://fortune.com/2016/09/28/yahoo-breach-bob-lord/

services or sister sites were affected; the total number of customers affected and how they were notified; what protection Yahoo is providing to its compromised customers; what steps consumers can take to best protect compromised information; what is the Company doing to prevent future breaches; and "[d]id anyone in the U.S. government warn Yahoo of a possible hacking attempt by state-sponsored hackers or other bad actors[,]" and if so, when was the warning issued? *Id.*

33.  On September 28, 2016, *The New York Times* published an article titled "Defending Against Hackers Took a Back Seat at Yahoo, Insiders Say" which stated, in part:

> SAN FRANCISCO — Six years ago, Yahoo's computer systems and customer email accounts were penetrated by Chinese military hackers. Google and a number of other technology companies were also hit.
>
> The Google co-founder Sergey Brin regarded the attack on his company's systems as a personal affront and responded by making security a top corporate priority. Google hired hundreds of security engineers with six-figure signing bonuses, invested hundreds of millions of dollars in security infrastructure and adopted a new internal motto, "Never again," to signal that it would never again allow anyone — be they spies or criminals — to hack into Google customers' accounts.
>
> Yahoo, on the other hand, was slower to invest in the kinds of defenses necessary to thwart sophisticated hackers that are now considered standard in Silicon Valley, according to half a dozen current and former company employees who participated in security discussions but agreed to describe them only on the condition of anonymity.
>
> When Marissa Mayer took over as chief executive of the flailing company in mid-2012, security was one of many problems she inherited. With so many competing priorities, she emphasized creating a cleaner look for services like Yahoo Mail and developing new products over making security improvements, the Yahoo employees said.
>
> The "Paranoids," the internal name for Yahoo's security team, often clashed with other parts of the business over security costs. And their requests were often overridden because of concerns that the inconvenience of added protection would make people stop using the company's products.
>
> * * *
>
> But Yahoo's choices had consequences, resulting in a series of embarrassing security failures over the last four years. . . .
>
> * * *

COMPLAINT
CASE NO. 16-cv-05643

- 9 -

> To make computer systems more secure, a company often has to make its products slower and more difficult to use. It was a trade-off Yahoo's leadership was often unwilling to make.
>
> * * *
>
> In 2013, disclosures by Edward J. Snowden, the former National Security Agency contractor, showed that Yahoo was a frequent target for nation-state spies. Yet it took a full year after Mr. Snowden's initial disclosures for Yahoo to hire a new chief information security officer, Alex Stamos.
>
> * * *
>
> But when it came time to commit meaningful dollars to improve Yahoo's security infrastructure, Ms. Mayer repeatedly clashed with Mr. Stamos, according to the current and former employees. She denied Yahoo's security team financial resources and put off proactive security defenses, including intrusion-detection mechanisms for Yahoo's production systems. Over the last few years, employees say, the Paranoids have been routinely hired away by competitors like Apple, Facebook and Google.
>
> Mr. Stamos, who departed Yahoo for Facebook last year, declined to comment. But during his tenure, Ms. Mayer also rejected the most basic security measure of all: an automatic reset of all user passwords, a step security experts consider standard after a breach. Employees say the move was rejected by Ms. Mayer's team for fear that even something as simple as a password change would drive Yahoo's shrinking email users to other services.

http://www.nytimes.com/2016/09/29/technology/yahoo-data-breach-hacking.html.

34. On September 30, 2016, *Business Insider* reported that a former Yahoo executive familiar with the Company's security practices stated that "the architecture of Yahoo's back-end systems is organized in such a way that the type of breach that was reported would have exposed a much larger group of user account information." As a result, the former executive believed that the number of the accounts subject to the Breach could be anywhere between 1 billion and 3 billion. *See* http://www.businessinsider.com/yahoo-insider-hacking-2016-9.

35. *Business Insider* further reported that:

> According to this executive, all of Yahoo's products use one main user database, or UDB, to authenticate users. So people who log into products such as Yahoo Mail, Finance, or Sports all enter their usernames and passwords, which then goes to this one central place to ensure they are legitimate, allowing them access.
>
> That database is huge, the executive said. At the time of the hack in 2014, inside were credentials for roughly 700 million to 1 billion active users accessing Yahoo products every month, along with many other inactive accounts that hadn't been deleted.

COMPLAINT
CASE NO. 16-cv-05643

- 10 -

> In late 2013, Yahoo CEO Marissa Mayer said the company had 800 million monthly active users globally. It currently has more than 1 billion.
>
> "That is what got compromised," the executive said. "The core crown jewels of Yahoo customer credentials."
>
> Yahoo's UDB is still the main repository for user credentials and is still in use, LinkedIn profiles from current Yahoo employees and a 2015 court ruling show.

*Id.*

## COUNTS

### FIRST CAUSE OF ACTION

### Negligence

36. Plaintiff incorporates and re-alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

37. Yahoo owed a duty to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting personal information in its possession from being compromised, lost, stolen, accessed and misused by unauthorized persons.  This duty included, among other things, designing, maintaining, and testing Yahoo's computer network security systems to ensure that Plaintiff and the other members of the Class' personal information in Yahoo's possession were adequately secured and protected.  Yahoo further owed a duty to Plaintiff and the other members of the Class to implement processes that would timely detect a breach of its computer security and to prevent mass exports of personal information out of Yahoo's computer network.

38. Yahoo owed a duty of care to Plaintiff and the other members of the Class and Subclass because they had entrusted their personal information to Yahoo with the expectation that Yahoo would keep that information secure and confidential.  Yahoo solicited, gathered, and stored the personal information for its own business purposes.  Yahoo, in the absence of negligence, would have known by holding massive amounts of personal information it was a lucrative target for hackers and a breach of its computer security systems and the stealing of personal data would damage to Plaintiff and the other members of the Class.  Yahoo had a duty to adequately protect such its customer's personal information from hackers.

COMPLAINT
CASE NO. 16-cv-05643

39. Plaintiff and other members of the Class relied on Yahoo to safeguard their personal information that it collected, used and stored and was in a position to (and capable of) protecting against the harm caused to Plaintiff and the other members of the Class as a result of the data breach.

40. Yahoo's own conduct created a foreseeable risk of harm to Plaintiff and the other members of the Class. Yahoo's misconduct included, but was not limited to, its failure to take the steps and opportunities to prevent and stop the data breach, and to timely detect and disclose the data breach as set forth herein.

41. Yahoo breached the duties it owed to Plaintiff and the other members of the Class by failing to exercise reasonable care and implement adequate security systems, protocols and practices sufficient to protect the personal information of Plaintiff the members of the Class.

42. Yahoo breached the duties it owed to Plaintiff and the other members of the Class by failing to properly implement technical systems or security practices that could have prevented the loss of the confidential data at issue.

43. Plaintiff and the other members of the Class were damaged by Yahoo's breach of this duty as a direct and proximate result of Yahoo's conduct suffered damages including, but not limited to, loss of control of their personal information, an added burden and cost of heightened monitoring for signs for identity theft and for undertaking actions such as credit freezes and alerts to prevent identity theft, and remediating acts and damages caused by identity theft, and other economic damages.

## SECOND CAUSE OF ACTION

### Violation of the California Data Breach Act

44. Plaintiff incorporates and re-alleges all allegations contained in the preceding paragraphs as if fully set forth herein.

45. The data breach described above constituted a "breach of the security system" of Yahoo within the meaning of Section 1798.82 (g) of the California Civil Code.

46. The information lost in the data breach constituted "personal information" within the meaning of Section 1798.80(e) of the California Civil Code.

47. Yahoo failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the data breach.

48. Yahoo unreasonably delayed informing anyone about the breach of security of Plaintiff and the Class' confidential and non-public information after Yahoo knew the data breach had occurred.

49. Yahoo failed to disclose to Plaintiff and the Class, without unreasonable delay, and in the most expedient time possible, the breach of security of their unencrypted, or not properly and securely encrypted, private personal identifying information when they knew or reasonably believed such information had been compromised.

50. Upon information and belief, no law enforcement agency instructed Yahoo that notification to Plaintiff and the Class would impede investigation.

51. As a result of Defendant's violation of Cal. Civ. Code § 1798.80 et seq., Plaintiff and the Class incurred economic damages, including expenses associated with necessary credit monitoring.

52. Plaintiff, individually and on behalf of the Class, seeks all remedies available under Cal. Civ. Code § 1798.84, including but not limited to: (a) damages suffered by the Class and Subclass as alleged above; (b) statutory damages for Yahoo's willful, intentional, and/or reckless violation of Cal. Civ. Code § 1798.83; and (c) equitable relief.

53. Plaintiff, individually and on behalf of the Class, also seeks reasonable attorneys' fees and costs under Cal. Civ. Code § 1798.84(g).

### THIRD CAUSE OF ACTION

**Violation of the New Jersey Data Breach Act**
**(On Behalf of the New Jersey Subclass only)**

54. Plaintiff incorporates and re-alleges all allegations contained in the preceding paragraphs as if fully set forth herein. Plaintiff and the other members of the New Jersey Subclass are consumers and customers who provided Personal Information to Yahoo for personal and private use.

55. By failing to timely notify Yahoo customers of the data breach, Yahoo violated N.J. Stat. Ann. §56:8-163, which provides, in part:

> 12. a. Any business that conducts business in New Jersey, or any public entity that compiles or maintains computerized records that include personal information, shall disclose any breach of security of those computerized records following discovery or notification of the breach to any customer who is a resident of New Jersey whose personal information was, or is reasonably believed to have been, accessed by an unauthorized person. The disclosure to a customer shall be made in the most expedient time possible and without unreasonable delay, consistent with the legitimate needs of law enforcement, as provided in subsection c. of this section, or any measures necessary to determine the scope of the breach and restore the reasonable integrity of the data system. Disclosure of a breach of security to a customer shall not be required under this section if the business or public entity establishes that misuse of the information is not reasonably possible. Any determination shall be documented in writing and retained for five years.
>
> * * *
>
> c. (2) The notification required by this section shall be delayed if a law enforcement agency determines that the notification will impede a criminal or civil investigation and that agency has made a request that the notification be delayed. The notification required by this section shall be made after the law enforcement agency determines that its disclosure will not compromise the investigation and notifies that business or public entity.

56. Further, N.J. Stat. Ann. 56:8-166 provides that "It shall be an unlawful practice and a violation of P.L. 1960, c.39 (C.56:8-1 et seq.) to willfully, knowingly or recklessly violate sections 10 through 13 of this amendatory and supplementary act."

57. The Yahoo Breach constituted a breach of the Yahoo security system within the meaning of the above New Jersey data breach statute and the data breached was protected and covered by the data breach statute.

58. Yahoo unreasonably delayed informing the public, including Plaintiff and the members of the Subclass, about the data breach after Yahoo knew or should have known that the data breach had occurred.

59. While the data breach and stealing of customer's personal information occurred in 2014, Yahoo did not notify customers of the Breach until September 2016, two years later.

60. Thus, Yahoo failed to disclose the Breach reach to Plaintiff and the other members of the Subclass without unreasonable delay and in the most expedient time possible.

61. Yahoo has provided no indication that any law enforcement agency requested that Yahoo delay notification. Plaintiff and the other members of the Subclass suffered harm directly resulting from Yahoo's failure to provide and the delay in providing notification of the Breach with timely and accurate notice as required by law.

62. As a result of said practices, Yahoo has directly, foreseeably, and proximately caused damages to Plaintiff and the other members of the Subclass. Had Yahoo provided timely and accurate notice of the Breach Plaintiff and the other members of the Subclass would have been able to avoid and/or attempt to ameliorate or mitigate the damages and harm resulting in the unreasonable delay by Yahoo in providing notice. Plaintiff and the Subclass members could have avoided providing further data to Yahoo, could have avoided use of Yahoo's services, and could otherwise have tried to avoid the harm caused by Yahoo's delay in providing timely and accurate notice.

## FOURTH CAUSE OF ACTION

**Declaratory Relief Regarding Defendant's Terms of Use Entitled "Yahoo Terms of Service"**

63. Plaintiff incorporates and re-alleges all allegations contained in the preceding paragraphs as if fully set forth herein.

64. As set forth above, Defendant's Yahoo's so-called "Terms of Service" appear to purport to eliminate liability of Defendant for any violations of the law.

65. Paragraph 20 of the Yahoo Terms of Service is entitled "Limitation of Liability" (the "Liability Limit") and provides:

> YOU EXPRESSLY UNDERSTAND AND AGREE THAT YAHOO AND ITS SUBSIDIARIES, AFFILIATES, OFFICERS, EMPLOYEES, AGENTS, PARTNERS AND LICENSORS SHALL NOT BE LIABLE TO YOU FOR ANY PUNITIVE, INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL OR EXEMPLARY DAMAGES, INCLUDING, BUT NOT LIMITED TO, DAMAGES FOR LOSS OF PROFITS, GOODWILL, USE, DATA OR OTHER INTANGIBLE LOSSES (EVEN IF YAHOO HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES),

RESULTING FROM: (a) THE USE OR THE INABILITY TO USE THE YAHOO SERVICE; (b) THE COST OF PROCUREMENT OF SUBSTITUTE GOODS AND SERVICES; (c) UNAUTHORIZED ACCESS TO OR ALTERATION OF YOUR TRANSMISSIONS OR DATA; (d) STATEMENTS OR CONDUCT OF ANY THIRD PARTY ON THE YAHOO SERVICE; OR (e) ANY OTHER MATTER RELATING TO THE YAHOO SERVICE.

66. To the extent that the Liability Limit attempts to exculpate Yahoo from liability for damages its customers incurred as a result of the Yahoo's negligence and/or violation of data-breach notification statute, the Liability Limit is void and unenforceable under Cal. Civ. Code §1668.

67. Additionally, paragraph 28 of the "Terms of Service" contains a provision regarding "Choice of Law and Forum" which provides the any dispute regarding the relationship between Yahoo and its customers or regarding the "Yahoo Terms of Service" be governed solely under the laws of the State of California and "without regard to conflicts of laws provision" (the "Choice of Law Provision").

68. The Choice of Law Provision deprives Plaintiff of her due process rights as a New Jersey resident to bring claims for Yahoo's failure to properly notify its customers of a data breach against a company doing business in the state of New Jersey.

69. Because the Choice of Law Provision violates plaintiff's due process rights to pursue claims under New Jersey law thus, the above choice of law provision is unenforceable and void.

70. Both Liability Limit and Choice of Law Provision result in Plaintiff having no meaningful choice, are contracts of adhesion, and therefore violate the public policy of New Jersey, resulting in those provisions being unconscionable and unenforceable, and should be declared as such.

///

///

///

**REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of herself and all others similarly situated, respectfully requests that this Court:

A. Certify this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), and appoint the Plaintiff as Class and Subclass representative and her counsel as Class counsel;

B. Award Plaintiff and the other members of the Class and Subclass appropriate relief, including actual and statutory damages;

C. Enter judgment in favor of Plaintiff and the other members of the Class and against the Defendant under the legal theories alleged herein;

D. Award reasonable attorneys' fees, costs, and expenses;

E. Award the Plaintiff and the other members of the Class and Subclass pre-judgment and post-judgment interest at the maximum rate allowable by law;

F. Award Plaintiff and the other members of the Class and Subclass equitable, injunctive and declaratory relief as may be appropriate under applicable laws. Plaintiff on behalf of the other members of the Class and Subclass seek appropriate injunctive relief designed to ensure against the recurrence of a data breach by adopting and implementing reasonable data security practices to safeguard Yahoo customers' personal information, by an Order requiring Yahoo to implement reasonable data security enhancements as they become available, including data encryption, segregation of sensitive data, more robust passwords, authentication of users, increased control of access to sensitive information on the network, prohibitions of mass exports of sensitive data;

G. Enter Declaratory Judgment that the provisions in Yahoo's Liability Limit and Choice of Law Provision do not constitute binding agreements and are unconscionable and unenforceable;

H. Enter such additional orders or judgment as may be necessary to prevent a recurrence of the Breach and to restore any interest or any money or property which may have been acquired by means of violations set forth in this Complaint; and

COMPLAINT
CASE NO. 16-cv-05643

I. Grant such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 5, 2016    By:    *s/ Patrice L. Bishop*
Patrice L. Bishop
**STULL, STULL & BRODY**
9430 West Olympic Blvd., Suite 400
Beverly Hills, CA  90212
Tel:   (310) 209-2468
Fax:   (310) 209-2087
Email: service@ssbla.com

Howard Longman
Patrick Slyne
**STULL, STULL & BRODY**
6 East 45th Street
New York, NY  10017
Tel:    (212) 687-7230
Fax:    (212) 490-2022
Email: hlongman@ssbny.com
           pkslyne@ssbny.com

*Counsel for Plaintiff*

COMPLAINT
CASE NO. 16-cv-05643